**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KAREN HECK-JOHNSON,**

                         **Plaintiff,**

       **v.**                                    **1:01-CV-1739**
                                                   **(GLS/RFT)**

**FIRST UNUM LIFE INSURANCE**
**COMPANY,**

                         **Defendant.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Office of Craig Meyerson       CRAIG MEYERSON, ESQ.
Airport Park
17 British American Boulevard
Latham, New York 12110

**FOR THE DEFENDANT:**

Bond, Schoeneck Law Firm       STUART F. KLEIN, ESQ.
111 Washington Ave.
Albany, New York 12210

**Gary L. Sharpe**
**U.S. District Judge**

              **Memorandum-Decision and Order**

**I.  Introduction**

Karen A. Heck-Johnson sued in New York Supreme Court alleging that First Unum Life Insurance Company impermissibly terminated her long-term disability benefits.  She alleged various state claims and violations of the Employee Retirement Income Security Act of 1974 ("ERISA").[1]  *See* 29 U.S.C. §§ 1001 *et seq.*  First Unum removed the action, and the action began a protracted and contentious trip through this court.  *See Heck-Johnson v. First Unum Life Ins. Co.*, Civil No. 9:01-CV-01739, 2006 WL 1228841 (N.D.N.Y. May 4, 2006) (familiarity with which is presumed).

Pending is First Unum's motion to dismiss Heck-Johnson's state claims on the basis of ERISA preemption.  So too, both parties cross-move for judgment on the administrative record.  As this court has stated, it treats such cross-motions as "*sui generis* ERISA motion[s] for judgment following the administrative denial of benefits."  *Robbins v. LaBerge Eng'g & Consulting Ltd.*, No. 1:01CV1738, 2005 WL 2039195, at *7 (N.D.N.Y. Aug. 24, 2005).  And finally, there are other pending motions seeking miscellaneous relief.

_____

[1]Heck-Johnson's employers, Hambre and AYCO, were original defendants who were subsequently dismissed by stipulation.  *See Dkt. No. 83.*

2

For the reasons that follow, the court: (1) grants First Unum's motion to dismiss all state claims as preempted by ERISA; (2) denies First Unum's ERISA motion for judgment; (3) grants Heck-Johnson's ERISA motion for judgment; and (4) denies all other miscellaneous motions.

## II.  Facts[2]

### A.  Heck-Johnson's Disability

In 1993, Heck-Johnson developed deep vein thrombosis in her left leg, and was out of work from May-October of that year.  *See Ayco SMF ¶ 3; Dkt. No. 40.*  In 1995, her physicians limited her weekly full-time schedule to forty hours.  *See id. ¶ 5.*  From September 1997 to January 1998, she was absent from work due to her disability but continued to receive her wages.  *See id. ¶¶ 6-7.*  In January 1998, she returned to work on a twenty hour, part-time basis in accordance with her doctor's instructions.  *See id. ¶ 8.*  Thereafter, she received partial disability benefits from First Unum and a reduced salary from Ayco commensurate with her

---

[2]The facts are derived from the parties' statements of material facts, including those of Hambre and Ayco.  Furthermore, there is only one administrative record involving Heck-Johnson's long-term disability benefits.  Because she cites to documents in the administrative record for the life insurance policy throughout her brief, the court painstakingly cross-referenced every cited document and found them in the long-term disability administrative record.  Accordingly, the court cites to the administrative record (AR) attached to First Unum's motion.  *See Hall Aff.; Ex. B; Dkt. No. 32.*

reduced schedule.  *See id.*  In June 1999, she stopped working and took

leave due to total disability.  *See Pl. SMF ¶ 6.*  Thereafter, she sought and

received long-term disability benefits from First Unum until November

2000.  *See Ayco SMF ¶ 11.*  First Unum then terminated her benefits.  *See*

*id. ¶ 13.*

### B.  Long Term Disability Plan

As an Ayco employee, Heck-Johnson bought a long-term disability

policy.  *See AR 80; Hall Aff.; Ex. B; Dkt. No. 32.*  First Unum was the

insurer.  *See First Unum SMF ¶ 1; Dkt. No. 33.*  The relevant provisions of

the Long Term Disability Plan are Section IV, subsection (C), and Section

II, which state:

> When the company receives proof that an insured is disabled
> due to sickness or injury and requires the regular attendance of
> a physician, the company will pay the insured a monthly
> benefit...for the period of disability if the insured gives the
> Company proof of continued: (1) disability and (2)  regular
> attendance of a physician.  Disability or disabled [means] that
> because of injury or sickness the insured cannot perform each
> of the material duties of his regular occupation.

*See AR* 89.

### C.  Medical Record

Throughout the relevant events, Dr. Lesile Danskin was Heck-

Johnson's treating physician.  *See AR 001-652.*  On November 3, 1994,

Heck-Johnson complained of recurrent pain in her thumb, left leg pain from

deep vein thrombosis, and lower back pain.  *See AR 601.*  In February and

March 1995, she continued treatment for her back and left leg pain.  *See

AR 603.*  On September 21, 1995, a bilateral ultrasound of her left leg

revealed no overt deep vein thrombosis.  *See AR 644.*  Although she

received treatment for her pain, she continued to work.  *See AR 604-12.*

On February 4, 1997, an MRI indicated that she had Type II

degenerative disc disease at the L5-S1 level with a mild central bulge.  *See

AR 646.*  On February 7, Dr. Danskin instructed her not to work more than

forty hours.  *See AR 612.*  After she received treatment for carpal tunnel

syndrome and depression, Dr. Danskin determined that she was totally

disabled on September 24.  *See AR 619.*  On October 5, she filed a

disability claim because of her depression, sleep disturbance and carpal

tunnel syndrome.  *See AR 537, 547, 556.*  She continued treatment for

carpal tunnel syndrome and depression until January 1998.  *See AR 619-

23.*

On June 5, 1998, First Unum approved Heck-Johnson's request for

disability payments, retroactive to March 1998.  S*ee AR 481-82.*  On

October 28, Dr. Danskin completed a Physical Capacities Evaluation

(PCE), and limited Heck-Johnson to two hours sitting, one hour standing

and two hours walking with no lifting over ten pounds.[3]  *See AR 418-19.*

On May 14, 1999, Dr. Danskin completed another PCE report, and stated

that there was permanent, non-reversible, venous damage to Heck-

Johnson's left leg.  *See AR 375-77.*  The report limited Heck-Johnson to

one hour standing and two hours sitting and walking with no lifting over ten

pounds.  *See id.*

On July 17, 2000, First Unum interviewed Heck-Johnson, and issued

a field report that detailed her daily activities.  *See AR 250-54.*  On

September 20, Nurse Corvin and a First Unum doctor medically reviewed

Heck-Johnson's records and found that she was able to sit, stand and

walk, as necessary.[4]  *See AR 209-11*, *212.*  At the same time, First Unum

issued a PCE report indicating that Heck-Johnson could engage in full-time

sedentary work.  *See AR 213-14.*

### D.  Denial of Benefits

On November 28, 2000, First Unum terminated Heck-Johnson's

---

[3]Heck-Johnson's supervisor filled out a survey form indicating the amount of walking, standing and sitting that was required in her position.  *See AR 590-91.*

[4]The doctor's name is illegible.

disability benefits, citing the personal interview and the medical reviewers'
findings.[5]  *See AR 194-96.*  On December 15, Heck-Johnson appealed
First Unum's decision, and supplied additional medical information.  *See
AR 197-202.*

On February 5, 2001, First Unum conducted another medical review
and again found that clinical data failed to support the conclusion that
Heck-Johnson could not perform full-time sedentary work.  *See AR 171-72,
174.*  On February 28, Dr. Danskin wrote First Unum and explained that
Heck-Johnson was totally disabled.  He opined that she was incapable of
present or future full-time sedentary work.  *See AR 157-58*, *134.*

On April 4, First Unum again denied the claim, finding that Heck-
Johnson's restrictions would not preclude her from performing the material
and substantial duties of her occupation.  *See AR 151,160.*  First Unum
also noted that Dr. Danskin's February 28, 2001, letter failed to cite clinical
data supporting his opinion.  *See AR 151.*  Thereafter, Heck-Johnson
retained counsel, and filed another appeal together with additional
documentation.  *See AR 136A*.  That documentation included information

---

[5]First Unum's denial letter quoted parts of Dr. Danskin's treatment notes which, *inter
alia,* stated that Heck-Johnson was feeling "overall...well," "takes a nap but keeps herself very
active," "doing well...now that she stays home," and "has lost twenty pounds...getting exercise."
*See AR 194-96.*

derived from referrals to Drs. Otto and Pelletier, a vascular surgeon and neurosurgical specialist, respectively.  *See AR 135.*  Dr. Otto found that Heck-Johnson's left leg "does have irrefutable damage to the venous vasculature on that side...and [that she] should in no way be working...." *See AR 136.*  Upon examination, Dr. Pelletier agreed that Heck-Johnson was disabled for "all of the reasons Dr. Danskin outlined."  *See AR 131-32.*

On July 12, First Unum conducted another medical review of the record, and upheld the denial of benefits.  *See AR 118-19.*  Specifically, First Unum's doctor opined that Heck-Johnson had mild degenerative disc disease, she had longstanding vascular damage to her left leg but had been able to work since 1993, and she was capable of sitting for six-eight hours with a stool for left leg elevation.  *See AR 122.*  On July 13, First Unum informed Heck-Johnson that she had exhausted her administrative remedies.  *See AR 119.*

## III.  <u>Discussion</u>

### A.  <u>ERISA Preemption Doctrine</u>

Heck-Johnson has five remaining causes of action.  In the first count, she asserts a claim for breach of contract under the long-term disability and

life insurance plans.  *See Compl. ¶ 33; Dkt. No. 1*.[6]  In her second and third

counts, she asserts claims for an untimely disclaimer of benefits and

promissory estoppel.  *See id. ¶¶ 33, 37*.  In the fourth and eighth counts,

she asserts an ERISA violation for disclaiming benefits and she seeks

declaratory judgment.  First Unum contends that her state law claims are

preempted under ERISA's exclusive civil enforcement scheme.

    ERISA contains a broad preemption clause stating that its provisions

"shall supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan described in section 1003(a)

of this title...."  29 U.S.C. § 1144(a).  "A law 'relates to' an employee benefit

plan, in the normal sense of the phrase, if it has a connection with *or*

*reference* to such a plan."  *Mackey v. Lanier Collection Agency & Serv.,*

*Inc.*, 486 U.S. 825, 829 (1988) (citation omitted).  Therefore, "any state-law

cause of action that duplicates, supplements, or supplants the ERISA civil

enforcement remedy conflicts with the clear congressional intent to make

the ERISA remedy exclusive and is therefore pre-empted."  *Aetna Health*

*Inc. v. Davil*, 542 U.S. 200, 209 (2004); *see also Pilot Life Ins. Co. v.*

_____

[6]Originally, Heck-Johnson asserted eight causes of action in her complaint against First Unum.  However, she has voluntarily withdrawn her fifth (fraud), sixth (infliction of emotional distress) and seventh (wrongful termination) causes of action as preempted by ERISA.  *See Pl. Opp. Br. p. 12; Dkt. No.* 37.

*Dedeaux,* 481 U.S. 41, 54-56 (1987); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 143-45 (1990).

The Supreme Court has held that ERISA "undoubtedly" preempts a plaintiff's state common law claims for tort and breach of contract where plaintiff challenges an insurer's eligibility determinations and benefit calculations under a long-term disability insurance policy. *See Pilot*, 481 U.S. at 47-48. Indeed, the Supreme Court further held that civil enforcement provisions in ERISA itself were "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits[.]" *Id.* at 52; *see also Aetna*, 542 U.S. at 209.

It logically follows "that if an individual brings suit complaining of a denial of coverage...where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of ERISA § 502(a)(1)(B).'" *Aetna*, 542 U.S. at 210 (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987)). "In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),

10

and where there is no other independent legal duty that is implicated by a
defendant's actions, then the individual's cause of action is completely
preempted by ERISA § 502(a)(1)(B)." *Aetna*, 542 U.S. at 210.

In order to determine whether Heck-Johnson's state claims fall within
the scope of ERISA § 502(a)(1)(B), the court must examine her complaint.
Her breach of contract, untimely disclaimer and promissory estoppel claims
clearly sound in contract law.  These causes of action arise from First
Unum's denial of coverage under the ERISA-regulated long-term disability
benefit and life insurance plan.  Moreover, relief for these claims exceeds
the authorized scope of ERISA's enforcement scheme.  Accordingly, the
first, second and third causes are dismissed because they are preempted.
The fifth, sixth and seventh causes were withdrawn by Heck-Johnson.
Accordingly, they are dismissed.  Heck-Johnson's fourth and eighth counts
survive because she seeks benefits under the ERISA enforcement
scheme.  Thus, the court turns to the ERISA claims.

### B. <u>ERISA Standard of Review</u>

Heck-Johnson and First Unum now disagree on the standard of
review governing this ERISA action.  From the onset of this litigation until
the day before the September 28, 2005, motion return, the parties agreed

that the appropriate standard was *de novo* because the operative plan did

not give the administrator or fiduciary the discretionary authority to

determine benefits eligibility.  *See Heck-Johnson,* 2006 WL 1228841, at *2.

 Now, First Unum argues that the arbitrary and capricious standard

governs because the plan was amended to give the administrator

discretionary authority to determine benefits prior to the final denial of

Heck-Johnson's claim.  Heck-Johnson counters that the standard is *de*

*novo* because the plan in effect at the time of disability controls.  For the

reasons that follow, the court applies the *de novo* standard because it

concurs with Heck-Johnson's position.[7]

Preliminarily, the court observes that the appropriate standard of

ERISA review is governed by *Firestone Tire and Rubber Co. v. Bruch*, 489

U.S. 101 (1989).  In *Firestone*, the Supreme Court held that: "a denial of

benefits...is to be reviewed under a *de novo* standard unless the benefit

---

[7]Heck-Johnson urges alternative bases supporting *de novo* review, including:  the plan amendment arose from discovery abuse and should be discounted; and First Unum has improperly switched theories by initially asserting that judicial review is limited to the administrative record, and then offering a plan amendment not contained in that record.  It is well-settled that "the decision whether to consider evidence from outside the administrative record is within the discretion of the district court."  *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003) (citation omitted).  "Nonetheless, the presumption is that judicial review is 'limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.'"  *Id.*  (citation omitted).  In any event, it is unnecessary to consider these arguments because the court declines to consider the amendment, and conducts a *de novo* review.

plan gives the administrator or fiduciary discretionary authority to determine

eligibility for benefits or to construe the terms of the plan." *Id.* at 115.

"Where an ERISA plan does not accord an administrator 'discretionary

authority to determine eligibility for benefits or to construe the terms of the

plan,' a district court reviews all aspects of an administrator's eligibility

determination including fact issues, *de novo*." *Locher v. Unum Life Ins. Co.

of Am.*, 389 F.3d 288, 293 (2d Cir. 2004) (quoting *Firestone*, 489 U.S. at

115).

Recently, the Second Circuit observed that "[w]ithout an explicit

reservation of [the Plan's] right to alter disability benefits after a beneficiary

became disabled, a [claimant's] right to benefits vested when he became

disabled." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571,

577 (2d Cir. 2006).  "A benefit becomes 'vested' if the employer has

promised not to amend or terminate it, and the employee has accepted this

offer by beginning or continuing in employment." *Gibbs*, 440 F.3d at 576

(citation omitted).  In other words, "where an ERISA plan beneficiary's

benefits have vested, the summary plan description in effect at the time the

benefits vest governs for purposes of determining the standard of review."

*Id.* at 572.  As the Circuit noted, "[i]f the employee does not like the terms,

he or she can decline and seek better terms elsewhere.  But this choice is one that an employee, once disabled, cannot make." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1212 (2d Cir. 2002).  Thus, "[o]nce the employee's rights have vested, an employer's subsequent unilateral adopting of an amendment which is then used to defeat or diminish the [employee's] fully vested rights ... is ... ineffective." *Gibbs*, 440 F.3d at 576 (alteration in original) (quotation marks and citation omitted).

Here, there is no dispute that when Heck-Johnson became disabled, the plan administrator did not have discretionary authority to determine a participant's disability.  *See AR 80-103.*  Accordingly, the *de novo* standard applies.[8]

The court turns to a *de novo* consideration of whether Heck-Johnson was disabled under the plan.  First Unum argues that she has failed to satisfy her burden of proving that she is disabled and entitled to benefits.  It contends that its denial was supported by the judgment of qualified medical professionals.  First, it cites three medical sources, Dr. Leonard Sutton (*AR 174*), Nurse Randy Corvin (*AR 212-213*) and Dr. Esterann Grayzel (AR

---

[8]Given the analysis that follows, the court would be hard-pressed under a deferential standard to find substantial evidence supporting First Unum's benefits denial in any event.

14

294-95), all of whom reviewed Heck-Johnson's data, and determined that she was not disabled.  It also cites a vocational consultant who reviewed Heck-Johnson's file and concluded that her restrictions and limitations did not preclude her from performing her occupation.  *See AR 213*.  It further argues that Heck-Johnson had ample opportunity to provide medical evidence supporting her disability claim.  Moreover, it contends that it had no obligation under the policy to examine her, or perform a functional capacity evaluation.  Finally, it asserts that there was ample medical evidence supporting its conclusion that medication could control Heck-Johnson's self-reported back and leg pain, and her hypertension and depression.

Heck-Johnson responds:  First Unum selectively isolated passages from Dr. Danskin's notes in order to credit the non-disability conclusions of its claims processors; First Unum failed to contact her treating physician to gain a true understanding of his diagnoses and notes; the policy language clearly requires disability payments when a claimant submits proof of disability; the Social Security Administration determined that she was disabled; and while a First Unum regional representative interviewed her, the medical reviewers never examined her or spoke to her.

"[N]othing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have a plan."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003) (citation omitted).  However, "plan administrators...may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  *Id.* at 834.  Nonetheless, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Id.*

Having conducted a *de novo* review of the administrative record, the court concludes that Heck-Johnson's benefits were wrongfully terminated.  The court concurs that First Unum selectively reviewed Dr. Danskin's notes and selected excerpts that supported its predetermined conclusion.  Dr. Danskin consistently concluded that Heck-Johnson was totally disabled, and that her condition was likely to worsen.  *See, inter alia, AR 157, 215, 218 and 375.*  Dr. Pelletier, an independent physician, concurred that Heck-Johnson was totally disabled.  *See AR 132.*  On December 15, 2000, Heck-

16

Johnson wrote First Unum and explained that when her doctor's treatment notes reflected that she was "doing better," he was comparing her condition to the prior year when she was bed ridden.  *See AR 197-202*.  She also explained that the notation in her medical record that she was "active" actually reflected her doctor's suggestion that walking would help her circulation.  *See id.*

The court recognizes that First Unum does not have to accept a treating physician's opinion as conclusive of the final disability determination.  However, *de novo* review reflects that First Unum was improperly selective when choosing data to support its non-disability conclusion, and consciously elected to ignore the medical record in its entirety as well as the logical explanations for the selective data it chose.  Accordingly, Heck-Johnson's disability benefits were wrongful terminated, and she is entitled to the retroactive reinstatement of benefits.

## C. Miscellaneous Motions

Although this decision provides clear guidance as to why other outstanding motions are either moot or without merit, the court briefly addresses those motions to clarify the docket.  *See Heck-Johnson,* 2006 WL 1228841, at *4-6.

First Unum's September 28, 2005, motion (*Dkt. No. 67*) seeking leave to withdraw its June 6, 2003, motion and refile a new motion is denied as moot.  *See Heck-Johnson,* 2006 WL 1228841, at *4.  First Unum had a full and fair opportunity to argue its view that the newly discovered amendment dictated arbitrary and capricious review.  A renewed motion would be limited to the application of that standard to the underlying administrative record, and the court has now determined that *de novo* is the correct standard, instead.  Accordingly, the original motion controlled the analysis.

Heck-Johnson's cross-motion (*Dkt. No. 76*) seeking to file a motion for summary and declaratory relief is denied as moot, and further denied for the reasons cited in the court's last decision.  *See Heck-Johnson,* 2006 WL 1228841, at *5.  The court has treated Heck-Johnson's original opposition to First Unum's motion as a cross-motion for ERISA relief.

Heck-Johnson's cross-motion (*Dkt. No. 76*) seeking sanctions is denied.  *See Heck-Johnson,* 2006 WL 1228841, at *5.  Despite her concern, no further discovery was necessary.  While it is true that she may have incurred further expenses because of increased litigation, attorney fees may be awarded in an ERISA action, if appropriate.

## IV.  Conclusion

Based upon the foregoing, it is hereby

**ORDERED** that First Unum's motion (*Dkt. No. 32*) seeking dismissal of Johnson's first, second, third, fifth, sixth, and seventh state law claims is **GRANTED** because such claims are preempted by ERISA, or abandoned; and it is further

**ORDERED** that First Unum's ERISA motion (*Dkt. No. 32*) seeking judgment is **DENIED**; and it is further

**ORDERED** that Heck-Johnson's ERISA cross-motion (*Dkt. Nos. 35-37, 42-43*) seeking judgment is **GRANTED**, and Heck-Johnson's disability benefits are retroactively reinstated; and it is further

**ORDERED** that First Unum's September 28, 2005, motion (*Dkt. No. 67*) seeking leave to withdraw its June 6, 2003, motion and refile a new motion is **DENIED** as moot; and it is further

**ORDERED** that Heck-Johnson's cross-motion (*Dkt. No. 76*) seeking to file a motion for summary and declaratory relief is **DENIED** as moot; and it is further

**ORDERED** that Heck-Johnson's cross-motion (*Dkt. No. 76*) seeking sanctions is **DENIED**; and it is further

19

**ORDERED** that the clerk electronically file this Order.

**SO ORDERED.**

Dated: December 4, 2007
　　　　Albany, New York

Gary L. Sharpe
U.S. District Judge